# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KARRIS BILAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 9253 |
| v. ) | |
| ) | Judge John W. Darrah |
| BP AMERICA INC. and JAMES DIETZ, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Karris Bilal, filed suit against Defendants, BP America Inc. and James Dietz, alleging race discrimination and retaliation. Presently before the Court is Defendants' Motion to Dismiss for Non-Compliance With Discovery Orders.

Bilal filed suit in December 2003. In November 2004, Defendants moved to compel Bilal's discovery responses. Among the information sought by Defendants was information regarding Bilal's expert witness, Dr. Jeffrey Santee, detailed information about Bilal's mitigation efforts, and Bilal's tax returns for the years 2000 to the present. The Court ordered Bilal to respond to Defendants' discovery requests by December 14, 2004. On December 14, 2004, Bilal produced a redacted tax return, which contained little, if any, substantive information for the year 2003 only.

Later in December 2004, Defendants again moved to compel Bilal to comply with discovery requests. On February 1, 2005, Bilal was ordered to provide all outstanding discovery by February 15, 2005. On February 8, 2005, the Court ordered all outstanding discovery was to be exchanged by both parties by March 8, 2005. On March 23, 2005, discovery was extended to April 22, 2005.

On March 29, 2005, Defendants moved to sanction Bilal for his failure to comply with the Court's discovery orders. Defendants sought, in part, to sanction Bilal for failing to provide certain discovery, including information concerning the substance, facts, and opinions of Dr. Santee and unredacted tax returns. On April 14, 2005, the Court granted Defendants' motion and ordered Bilal to comply with all discovery requests within seven days.

On April 21, 2005, the day before discovery closed, Bilal produced some tax information, seventy-seven pages of new documents relating to his mitigation of damages, and now identified Dr. Santee as a "possible expert." The discovery produced included Bilal's unsigned and incomplete federal tax returns for the years 2001, 2002, 2003, and 2004. The tax returns, while incomplete, did contain new information that may be relevant to Defendants' defense and/or to the issue of Bilal's mitigation of damages.

Defendants seek to have the case dismissed pursuant to Federal Rule of Civil Procedure 37 for Bilal's failure to obey the Court's orders.

Federal Rule of Civil Procedure 37(b)(2) provides, in pertinent part:

> If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> * * *
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof.
>
> * * *
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the

> failure was substantially justified or that other circumstances make an award of expenses unjust.

A Rule 37(b)(2) dismissal requires a showing by clear and convincing evidence of willfulness, bad faith or fault on the part of the noncomplying party. *See Maynard v. Nygren*, 332 F.3d 462, 467-68 (7th Cir.) (*Maynard*). Dismissal of a suit based on noncompliance is perceived as a draconian measure. In deciding if sanctions are appropriate, the court considers the egregiousness of the misconduct in relation to all aspects of the judicial process. *See Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003).

In response to Defendants' motion, Bilal contends that dismissal is not warranted because he has produced the tax materials he has been able to locate, he has not yet filed his 2004 tax returns, and the copies are unsigned because he files electronically. He also contends that discovery produced relating to his mitigation of damages and Dr. Santee were responsive to Defendants' requests. Lastly, dismissal is not warranted because there has been no previous finding by the Court of willfulness as to Bilal's conduct.

Defendants argue that Bilal has repeatedly refused to follow the Court's orders and that the latest discovery production demonstrates Bilal's willfulness, bad faith and fault.

On April 21, 2005, Bilal produced an unredacted copy of his 2003 federal income tax return. The unredacted 2003 return shows, in typed numbering, unemployment compensation of $24,128 and total income of $-69,338. However, the redacted copy of his 2003 return that he produced in December 2004 shows, in handwriting, unemployment compensation income of $15,888 and total income of $15,888. These two figures are the only non-redacted figures that are handwritten; the other non-redacted figures (all "0s") are typewritten. Bilal contends that the December 2004

production includes lower amounts because he and his wife file a joint return, and he did not include his wives' income in the tax return produced in December 2004.

Further evidence cited by Defendants of Bilal's "pattern of dishonesty" is demonstrated through discrepancies in documents produced and Bilal's answers to interrogatories and his deposition testimony. In response to a subpoena to Bilal's bank, TCF Bank, Defendants received documents relating to Bilal's personal and business accounts. One of the accounts was for the Bilal Law Firm. The bank records show that the account was opened on July 31, 2003. Bilal's sworn answer to Defendants' Interrogatory No. 8 states that the firm opened in the first quarter of 2004. In addition, in his deposition on March 23, 2005, Bilal testified that he could not recall whether he received any compensation from his law firm. In his Amended Answer to Defendants' Interrogatory No. 8, dated November 5, 2005, Bilal stated that he received approximately $10,000 from his law firm business. However, the TCF Bank records show transfers from Bilal's law firm account to Bilal's personal accounts in amounts such as $10,000 on February 1 and March 4, 2005; $1,600 on February 28, 2005; $1,900 on February 11, 2005; $1,700 on January 28, 2005; $1,500 on January 24, 2005; and $500 on December 23, 2004.

Bilal contends that he answered the questions truthfully and that he specifically told Defendants that he had not yet prepared the financial records for his law practice which would disclose monies transferred from his law practice account.

Another of TCF's accounts was in the name of Titanium Limousines Inc. The records show that Bilal is the only authorized signer on the account and that the account has been active from September 2000 through March 2005. These records contradict Bilal's November 8, 2004 deposition testimony that he had ceased to act as President of Titanium, but he could not recall when

he ceased to act as President and Treasurer of Titanium and did not even know whether Titanium was still operating. These records are relevant to Bilal's job performance and to Defendants' after-acquired evidence defense that Bilal falsified his ethics certification in November 2001 by not disclosing his association with Titanium. Bilal contends that at his deposition he truthfully answered, to the best of his ability, all questions posed.

Other unexplained discrepancies include Bilal's federal income tax returns for the years 2002 and 2003 that list K & N Enterprises as a business entity creating business losses greater than $300,000 for Bilal and his wife. However, in his interrogatory response seeking information about ownership interest in any other business other than BP from August 3, 1998 to the present, Bilal only indicated Titanium. Bilal contends that his failure to identify K & N Enterprises was an inadvertent and immaterial omission.

As to Dr. Santee, Bilal contends that he has provided the Defendants with information regarding any possible expert opinions Dr. Santee may relate and agreed to a second deposition of Dr. Santee, which Defendants cancelled.

As set out above, Bilal has provided the discovery that was within his control and has offered explanations for the alleged acts of noncompliance. Defendants have failed to demonstrate by clear and convincing evidence that Bilal's alleged noncompliance was willful or in bad faith. *See Maynard*, 332 F.3d at 467-68. Accordingly, dismissal of Bilal's suit is denied. However, if any

further discovery is outstanding by either party, such discovery must be exchanged within seven days of this order.

For the reasons stated above, Defendants' Motion to Dismiss is denied.

Dated: 6/28/05

JOHN W. DARRAH
United States District Judge