# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KARRIS BILAL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 03 C 9253 ) ) Judge John W. Darrah |
| BP AMERICA INC. and JAMES DIETZ, | ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Karris Bilal, filed suit against Defendants, BP America Inc. and James Dietz, alleging race discrimination and retaliation. Presently before the Court is Defendants' Motion for Summary Judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of its claim on which it bears the burden of proof at trial. As such, it must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

Bilal's response to Defendants' proposed Local Rule 56.1 statement of material facts does not admit nor deny the proposed undisputed facts. Instead, Bilal "agrees" with some of the proposed undisputed facts; and, for others, he neither admits nor denies the proposed statement but includes additional facts of his own. Bilal titled his response to Defendants' Motion for Summary Judgment

as including "Additional Facts Which Require Denial of Summary Judgment." However, the only "additional facts" are contained in his "response" to Defendants' properly presented proposed undisputed facts.

Weeks after Defendants' Motion for Summary Judgment was fully briefed, Bilal sought, and was granted, leave to file an amended and supplemental response to Defendants' proposed undisputed facts. Bilal's supplemental responses fail to admit or deny numerous proposed statements of Defendants. For other statements, Bilal "agrees" with the statement then adds additional information. In other statements regarding whether Bilal had performance problems at work, Bilal "acknowledges" the statement is accurate and then denies the substance of the statement with his belief that he was not having any performance problems. Bilal also includes "additional facts" in his supplemental response. However, the supplemental additional statements merely identify those arguments Bilal is presenting in opposition to Defendants' Motion for Summary Judgment, *i.e.*, "Whether Dietz and BP Retaliated against Plaintiff."

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain:
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

The district court is entitled to strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board*

*of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). Because Bilal failed to properly dispute any of Defendants' proposed statements of fact, the facts are deemed admitted. Bilal's "additional facts" are not considered because they are not presented in compliance with Local Rule 56.1(b)(3)(B).

BP America is an energy company that supplies oil, gas, and renewable energy sources to customers throughout the United States. (Def.'s 56.1(a)(3) Statement ¶ 3). James Dietz is employed by BP as Head of Tax - U.S. Refining and Marketing. Dietz held this position during the relevant times of the present suit and supervised Bilal. (Id., ¶ 4).

Bilal, an African-American, was employed with Amoco Corporation in the Fall of 1998 as a Tax Attorney. (Def.'s 56.1(a)(3) Statement ¶ 4). Amoco merged with BP in early 2000, and Bilal began reporting to Dietz as a Tax Attorney in the BP Downstream Income Tax Group. (Id., ¶ 7). Dietz assigned Bilal to act as the primary contact for BP Pipelines, the business that oversees the transportation of crude oil and natural gas by pipelines. (Id., ¶ 8).

As Dietz interacted with Bilal in 2000, Dietz became increasingly concerned that Bilal's knowledge of tax law and business issues was insufficient. (Def.'s 56.1(a)(3) Statement ¶ 9). Dietz also received negative feedback regarding Bilal from others in the Tax Department after they attended presentations by Bilal or worked on projects with Bilal. (Id., ¶ 10). In an attempt to provide Bilal with additional support, Dietz assigned two of Bilal's co-workers, Larry Lewandowski and Bill Cariato, to work with Bilal. Lewandowski and Cariato had been in the Tax Department since 1984 and 1990, respectively. (Id., ¶ 11). Lewandowski and Cariato separately approached

Dietz to express their concerns that Bilal did not have the knowledge or skills necessary to provide competent advice to tax clients. (Id., ¶ 12). In Bilal's performance review for the year 2000, dated March 7, 2001, Dietz wrote, in part:

> Karris needs to continue to obtain a deeper understanding of the [Pipelines] business so that he can present opportunities to the business in a confident manner. As lead planner for this BU, he also needs to better engage the business so that communication lines remain open and Tax is brought into projects as they are initiated and not after the fact.
>
> Karris has further developed his technical skills through attendance at external seminars in the partnership area. Both external and self-directed study will be continued during 2001. As to personal skills, interim discussions regarding time management have provided improvements, but continued diligence will be required as we move forward.
>
> Karris has used a teamwork approach in his efforts and has worked well with more experienced team members such as Larry Lewandowski on a number of projects. He is encouraged to continue to use the expertise of senior members of the downstream team for his future development.

(Id., ¶ 13).

A few months after Bilal received his review, Dietz received input from Leslie Stulberg, a BP Tax Attorney, regarding Bilal's poor performance on a project. Stulberg told Dietz that Bilal did not familiarize himself with the deal, did not pay attention to the deal's deadlines, did not reach the purchase agreement carefully, and did not analyze the deal's tax issues properly. (Def.'s 56.1(a)(3) Statement ¶ 14). Concluding that his informal efforts to assist Bilal in his job were not sufficient, Dietz met with Bilal on May 29, 2001, to discuss Bilal's performance problems, including: the lack of familiarity with the Pipeline business, the depth of his technical expertise, and his attendance record. During the meeting, Dietz placed Bilal on probation for poor performance and informed

4

Bilal that he would no longer be the primary contact for the Pipeline business. (Id., ¶ 16). Dietz memorialized the meeting with Bilal in an e-mail, in which he confirmed that Lewandowski would be assuming Bilal's role as primary contact to the Pipelines group. Dietz also identified five areas of Bilal's performance that required immediate improvement: (1) more attention to familiarization with underlying transaction structure, (2) more attention to deadlines, (3) better contact with the business unit, (4) better understanding of the tax implications advice, and (5) adherence to work schedule. (Id., ¶ 17).

Bilal claims that Dietz made the following racial remarks at the meeting: (1) "If it was left up to me, I wouldn't hire any of your kind"; (2) "You don't know who you are messing with, boy. You know we make the decisions here; you don't"; and (3) "If you cause trouble, I will destroy your black ass." (Def.'s 56.1(a)(3) Statement ¶ 28).

Following the May 29 meeting, Dietz met with Bilal on a weekly basis to discuss his work projects and ways that Bilal could improve his performance. (Def.'s 56.1(a)(3) Statement ¶ 18). In early 2002, Dietz prepared Bilal's 2001 performance review. In that review, Dietz noted that Bilal had improved his performance in some areas identified in their May 29 meeting, but Bilal still needed to improve his performance in other areas. (Id., ¶ 19).

On July 18, 2002, the Tax Management Team, the leaders of BP's United States tax function, met in Seattle. Present at the meeting were Dietz; James Nemth, Vice President & General Tax Officer; Paul Wessells, Tax Officer-Upstream; Sam Swisher, Associate General Tax Counsel-Chemicals; Paul Novak, Associate General Tax Counsel; Dale Shrallow, Associate General Counseling, Planning and Litigation; William Mangan, Manager U.S. Tax; and Susan Rogers, Head of U.S. Tax Policy. (Def.'s 56.1(a)(3) Statement ¶ 20). The Team discussed various personnel

5

issues. After reviewing performance and long-term career prospects, the Team decided that three individuals should be informed that their employment with BP would terminate at the end of the year. These three individuals were Bilal, James Kutilek, and Fred D'Amato. (Id., ¶ 21). Kutilek and D'Amato are Caucasian. (Id., ¶ 22). When Dietz returned from the Seattle meeting, Dietz met with Bilal to inform him that his employment with BP would end by the close of the year. Dietz encouraged Bilal to feel free to search for another job in the upcoming months leading to his separation. (Id., ¶ 23).

On September 25, 2002, Bilal met with BP Human Resources Representative Denise Lugo to lodge a complaint of race discrimination against Dietz. (Def.'s 56.1(a)(3) Statement ¶ 24). BP Human Resources investigated the complaint and concluded that it had no basis. (Id., ¶ 25). Bilal did not inform anyone at BP Human Resources or BP management that Dietz made racial remarks. (Id., ¶¶ 29-30).

Bilal's employment with BP ended on December 31, 2002. (Def.'s 56.1(a)(3) Statement ¶ 26). On January 10, 2003, Bilal filed a discrimination charge with the Equal Employment Opportunity Commission against BP. (Id., ¶ 27). Between December 2002 and March 2003, Bilal's attorney sent letters to BP officials, setting forth detailed accounts of the mistreatment Bilal allegedly suffered during his employment with BP. None of the letters mention racial comments by Dietz. (Id., ¶ 31). Bilal's counsel's position paper to the EEOC and a letter providing additional information to the EEOC did not mention any alleged racial comments by Dietz. (Id., ¶ 32). The EEOC investigator's notes from her interview with Bilal do not include any mention of racial comments by Dietz. (Id., ¶ 33).

Bilal's treating psychologist, Dr. Jeffrey Santee, had seven counseling sessions with Bilal between October 14, 2002 and December 5, 2002. Dr. Santee's notes from these sessions detail Bilal's adverse treatment by BP but do not mention racial comments by Dietz. (Def.'s 56.1(a)(3) Statement ¶ 34). Between December 5, 2002 and November 25, 2003, Bilal did not receive treatment from Dr. Santee. On November 25, 2003, a few weeks before Bilal filed the instant suit, Bilal visited Dr. Santee. Dr. Santee's notes reflect that Bilal told him about Dietz's alleged racial statements at the November 25, 2003 session. (Id., ¶ 35).

Bilal may prevail on his discrimination claims either through the "direct method" - showing intentional discrimination – or through the similar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005) (*Blise*); *Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002) (same standard in a Title VII case applies to a Section 1981 claim). The direct method of proving discrimination requires the introduction of direct or circumstantial evidence of discrimination. Direct evidence requires, essentially, an admission by the defendant that the action was based on a prohibited animus. *See Blise*, 409 F.3d at 866. Bilal does not present direct evidence.

A plaintiff may also proceed under the direct method by constructing a "convincing mosaic" of circumstantial evidence that a jury would infer to be intentional discrimination. The circumstantial evidence must point directly to a discriminatory reason for the adverse action. *See*

Bilal's treating psychologist, Dr. Jeffrey Santee, had seven counseling sessions with Bilal between October 14, 2002 and December 5, 2002. Dr. Santee's notes from these sessions detail Bilal's adverse treatment by BP but do not mention racial comments by Dietz. (Def.'s 56.1(a)(3) Statement ¶ 34). Between December 5, 2002 and November 25, 2003, Bilal did not receive treatment from Dr. Santee. On November 25, 2003, a few weeks before Bilal filed the instant suit, Bilal visited Dr. Santee. Dr. Santee's notes reflect that Bilal told him about Dietz's alleged racial statements at the November 25, 2003 session. (Id., ¶ 35).

Bilal may prevail on his discrimination claims either through the "direct method" - showing intentional discrimination – or through the similar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005) (*Blise*); *Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002) (same standard in a Title VII case applies to a Section 1981 claim). The direct method of proving discrimination requires the introduction of direct or circumstantial evidence of discrimination. Direct evidence requires, essentially, an admission by the defendant that the action was based on a prohibited animus. *See Blise*, 409 F.3d at 866. Bilal does not present direct evidence.

A plaintiff may also proceed under the direct method by constructing a "convincing mosaic" of circumstantial evidence that a jury would infer to be intentional discrimination. The circumstantial evidence must point directly to a discriminatory reason for the adverse action. *See*

*Blise*, 409 F.3d at 866. Here, Bilal believes that Dietz discriminated against him because of his race based on: (1) the alleged racial comments Dietz made at the May 29, 2001 meeting; (2) Bilal's belief that he had more seniority and better work performance compared to others who were not terminated; and (3) the presence of two different reasons for his termination – downsizing and poor performance.

As set out above, Bilal alleges that Dietz made the following racial remarks in May 2001: (1) "If it was left up to me, I wouldn't hire any of your kind"; (2) "You don't know who you are messing with, boy. You know we make the decisions here; you don't"; and (3) "If you cause trouble, I will destroy your black ass." (Id., ¶ 28). However, Bilal first claimed these statements were made a few weeks before filing suit and more than two years after he claims they were spoken. Under these circumstances, it is reasonable to question the truthfulness of the alleged racial statements of Dietz. *See Seshardi v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997).

Moreover, the purported statements were made over a year before the decision was made to terminate Bilal's employment. Even accepting Bilal's assertion as credible, he has failed to demonstrate that the statements were proximate to and related to the decision to terminate his employment. *See Schreiner v. Caterpillar, Inc.*, 250 F.3d 1096, 1099 (7th Cir. 2001) (stray remarks unrelated to the alleged discriminatory decision are not sufficient to establish an inference of discrimination); *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1293 (7th Cir. 1997) (derogatory comments do not evidence pretext to discrimination unless they are both proximate and related to the employment decision).

Bilal's personal belief that his work performance was not deficient as compared to some other employees who had less seniority also does not demonstrate intentional discrimination. In

support of his argument that he had better work performance than others not terminated, Bilal relies only on his own deposition testimony. Furthermore, Bilal does not identify anyone with less seniority that had poor work performance who was not terminated. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 980 (7th Cir. 2004) (plaintiff's self-evaluation does not create a genuine issue of material fact about the employer's honest performance assessment of inadequate performance); *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 436 (7th Cir. 2005) (plaintiff's belief that he is better qualified is not evidence of pretext).

The alleged two different reasons for Bilal's termination also do not demonstrate intentional discrimination. To permit an inference of discrimination, different reasons for the adverse employment action must actually be shifting and inconsistent. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003). Here, Bilal was informed he was being terminated because of downsizing and poor performance. These purported reasons are not inconsistent. Furthermore, Bilal concedes that two white employees were terminated by the same decision makers as part of the same decision-making process that led to Bilal's termination.

Bilal cites to *West v. Ortho-McNeil Pharmaceutical Corp.*, 405 F.3d 578 (7th Cir. 2005) (*West*), in support of his response to Defendants' motion. *West* is easily distinguished from Bilal's case.

In *West*, the trial court excluded evidence of seven discriminatory remarks allegedly made by West's supervisor on grounds that the remarks were time-barred. After West completed his case-in-chief, the court granted the defendant's motion for judgment as a matter of law. The Seventh Circuit reversed, finding that the seven remarks were not time-barred. *West*, 405 F.3d at 581. Furthermore, West's evidence – including the alleged discriminatory comments, other employees

who were not discharged for the same conduct leading to West's termination, and West's claim that his supervisor encouraged him to take the action that led to his termination – presented a "close question" that must be decided by the jury. *West*, 405 F.3d at 581-82. The *West* court did not address whether the alleged comments were contemporaneous and related to the decision to terminate West. Furthermore, unlike the instant case, West presented other evidence of discrimination, including other employees who were not discharged for the same conduct leading to his termination and his claim that his supervisor encouraged him to take the action that led to his termination. Based on the facts before the Court, Bilal has failed to demonstrate a genuine issue of material fact exists as to whether he has established a claim of intentional race discrimination.

To establish a *prima facie* case of race discrimination under the *McDonnell Douglas* framework, Bilal is required to demonstrate that: (1) he was a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably.[1] *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir. 2001). If Bilal demonstrates a *prima facie* case, the burden shifts to Defendants to demonstrate "a legitimate, nondiscriminatory reason for the action." *Blise*, 409 F.3d at 867. If Defendants meet this burden, the burden shifts back to Bilal to demonstrate the proffered reason is pretextual. *Blise*, 409 F.3d at 867.

Bilal has established that he is a member of a protected class and that he experienced an adverse employment action – his termination of employment. However, he has failed to establish

---

[1] Bilal's response does not address whether he established a claim of discrimination under the *McDonnell Douglas* framework. However, for completeness, the Court addresses this issue.

that he was performing his job satisfactorily; and he has failed to identify any similarly situated individuals who were treated more favorably.

The undisputed facts demonstrate that: Bilal had a history of not meeting BP's expectations; Dietz tried to work with Bilal to aid Bilal in overcoming his deficiencies; and, ultimately, responsibilities were taken away from Bilal because of his deficiencies. In addition, Bilal has failed to identify any similarly situated individual who was treated more favorably. Contrary to any similarly situated individual who was treated more favorably, Bilal concedes that two white employees were terminated by the same decision makers as part of the same decision-making process that led to Bilal's termination.

Even if Bilal was able to establish a *prima facie* case, he has failed to establish that BP's reason for terminating his employment – his documented deficiencies in his work – was a pretext to race discrimination. A plaintiff can establish pretext by showing that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998) (*Debs*). Pretext in this context does not mean a mistake; rather, it means "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir 1995). An honest belief in the nondiscriminatory reason offered by the decision maker will be sufficient even if the reasons are foolish, trivial, or even baseless. *Debs*, 153 F.3d at 396.

As discussed above, the undisputed facts establish that Bilal had a history of work-related deficiencies, which led to his termination. Also, as discussed above, Bilal has failed to demonstrate

11

that the decision to terminate him based on these deficiencies was a lie or pretext. Accordingly, Bilal has failed to demonstrate a genuine issue of material fact exists as to whether he has established a claim of racial discrimination under the *McDonnell Douglas* framework.

A plaintiff may prove retaliation claims under Title VII and Section 1981 by either the direct method of proof or an indirect method of proof derived from *McDonnell Douglas*.[2] However, "[i]t is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against [him] for engaging in statutorily protected activity." *Herron v. DiamlerChrysler Corp.*, 388 F.3d 293, 302 (7th Cir. 2004). Thus, under either method of proof, a plaintiff must demonstrate that he engaged in protected activity before the adverse employment action took place. *Herron*, 388 F.3d at 302; *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) ("An employer cannot retaliate if there is nothing for it to retaliate against.").

Here, the decision to terminate Bilal's employment was made on July 18, 2002. Bilal did not file his first claim of discrimination until September 25, 2002, over two months after the decision to terminate his employment had already been reached and he had been advised of that decision. Accordingly, Bilal's retaliation claims fail.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted.

Dated: January 10, 2006

JOHN W. DARRAH
United States District Judge

---

[2] Bilal does not address his retaliation claims in any manner in his response to Defendants' Motion for Summary Judgment.